**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

ARNOLD'S OFFICE FURNITURE, LLC *et al*,　　　　:
　　　　　　　　Plaintiffs,　　　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　　　　　　　:
　　　　　　　　v.　　　　　　　　　　　　　　　　　　:　　Civil No. 5:20-cv-05470-JMG
　　　　　　　　　　　　　　　　　　　　　　　　　　:
IAN BORDEN, *et al*,　　　　　　　　　　　　　　　:
　　　　　　　　　　Defendants.　　　　　　　　　　　:

**MEMORANDUM OPINION**

**GALLAGHER, J**　　　　　　　　　　　　　　　　　　　　　　**February 22, 2022**

　　　　Plaintiff Arnold's Furniture, LLC employed Defendant Ian Borden as a salesperson. Plaintiff Sunline, LLC is a separate entity operated by the owners of Arnold's, LLC.  During the COVID-19 pandemic, Plaintiffs began selling personal protective equipment ("PPE"). Defendant was one of Plaintiffs' top performing employees and sold large amounts of PPE to Plaintiffs' customers. During his employment, Defendant created the Ian M Borden Group ("IMBG") to sell PPE and continued selling PPE after his termination. Plaintiffs bring trade secrets misappropriation claims under the Defend Trade Secrets Act ("DTSA") and the Pennsylvania Uniform Trade Secrets Act ("PUTSA"), alleging misappropriation of customer lists, pricing information, and goodwill. Plaintiffs also assert claims of Breach of Contract and Breach of Fiduciary Duty. Defendant counterclaims for Breach of Contract and unpaid commissions in violation of the Pennsylvania Wage Payment and Collection Law ("WPCL").  The parties have moved for summary judgment on all counts. For the reasons that follow, the Court will deny the cross-motions for summary judgment.

## I.     FACTUAL BACKGROUND

### 1.  Allegations

Plaintiff Arnold's Office Furniture, LLC, is a Pennsylvania company that sells office supplies and furniture. Pl.'s Statement of Facts ("PSOF") ¶ 1; Def.'s Opp'n to Pl.'s Statement of Facts ("DOPSOF") ¶ 1. Plaintiff Sunline, LLC, is a Pennsylvania company associated with Arnold's Office Furniture, LLC. POSF ¶¶ 11-12; DOPSOF ¶¶ 11-12. Plaintiffs allege that Arnold's uses Sunline as a marketing device to sell PPE. PSOF ¶ 12. Jordan Berkowitz is the President of Arnold's and Sunline. PSOF ¶ 24; DOPSOF ¶ 24.

Defendant Ian Borden worked as a salesperson for Arnold's from August 17, 2017 through October 19, 2020. PSOF ¶¶ 15-16; DOPSOF ¶¶ 15-16. When Defendant was hired, he executed an employment contract (the "Offer Letter") which contained a non-solicitation clause. PSOF ¶¶ 34-35; DOPSOF ¶¶ 34-35.

Due to the COVID-19 pandemic, Plaintiffs began exploring options to obtain and sell FDA-certified PPE. PSOF ¶ 46; DOPSOF ¶ 46. Plaintiffs acquired a reliable source of PPE and instructed their entire sales staff, including Defendant, to begin selling PPE. PSOF ¶ 50-5; DOPSOF ¶ 50. Plaintiffs allege that the sales staff earned a 2% commission for all PPE sales, which were due only upon payments received from buyers. PSOF ¶ 58. Defendant claims the commission policy was silent as to when commissions were earned. DOPSOF ¶ 58.

To assist in PPE sales, Plaintiffs created sub-directories on an internal shared drive where salespersons could access customer lists, pricing information, vendor information, and marketing materials. PSOF ¶ 60, DOPSOF ¶ 60. Plaintiffs provided their sales force with full access to the confidential customer base. PSOF ¶ 61; DOPSOF ¶ 6.

Defendant officially formed IMBG on July 15, 2020. PSOF ¶ 18-19, 65; DOPSOF ¶ 18-19, 65. Plaintiffs allege that Defendant forwarded customer and pricing lists to his personal email and Dropbox accounts and sold PPE to prospective customers. PSOF ¶¶ 67, 72, 74; DOPSOF ¶¶ 72, 74.

Plaintiffs became aware of IMBG on August 1, 2020. PSOF ¶ 91; DOPSOF ¶ 91. Plaintiffs allege that they told Defendant to immediately stop conducting business through IMBG, but Defendant disputes this fact. PSOF ¶ 92. Plaintiffs also told Defendant that they would help him sell IMBG's remaining inventory. PSOF ¶ 93; DOPSOF ¶ 93. On August 5, 2020, Defendant met with Jordan Berkowitz, who informed him that IMBG posed a direct conflict of interest to Plaintiffs. PSOF ¶ 96; DOPSOF ¶ 96. Plaintiffs allege that Defendant continued selling PPE after this meeting.

Plaintiffs terminated Defendant on October 19, 2020. PSOF ¶ 111, DOPSOF ¶ 111. Plaintiffs allege that Defendant continued selling PPE to prospective and existing customers after termination, thus breaching the non-solicitation agreement contained in the Offer Letter. PSOF ¶¶ 118-119. Defendant asserts that the customers he sold PPE to were not prospective customers and the non-solicitation agreement did not preclude him from selling PPE to customers who initiated contact. DOPSOF ¶¶ 118-122.

Plaintiffs now allege that Defendant misappropriated trade secrets by taking customer and pricing lists, breached his non-solicitation agreement by selling PPE to actual and prospective customers, and breached his fiduciary duty of loyalty by creating IMBG and selling PPE during his employment. Defendant disputes these allegations and maintains that Plaintiffs breached the employment contract and violated the WPCL by failing to pay his earned commissions.

### 2. Procedural History

Plaintiffs filed this suit on November 2, 2020. (ECF No. 1). On August 9, 2021, both parties moved for summary judgment. (ECF Nos. 59 & 60). Both parties responded to the respective motions for summary judgment on August 30, 2021. (ECF Nos. 85 & 87). On September 10, 2021, Plaintiffs filed a response in support of their motion. (ECF No. 88). Defendant filed a reply brief to Plaintiffs' response on September 10, 2021. The cross-motions for summary judgment are now ripe for decision.

## II.   LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248.

In deciding a motion for summary judgment, a court must "view the facts and draw reasonable inferences in the light most favorable to the party opposing the summary judgment motion." *Scott v. Harris*, 550 U.S. 372, 378 (2007). The party moving for summary judgment "always bears the initial responsibility of . . . identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotations omitted). In response, "the adverse party must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250. "Notably, these summary judgment rules do not apply any differently where there are cross-

-4-

motions pending." *Synthes, Inc. v. Emerge Med., Inc.*, 25 F. Supp. 3d 617, 666 (E.D. Pa. 2014) (citing *Lawrence v. City of Phila.*, 527 F.3d 299, 310 (3d Cir. 2008).

## III.   DISCUSSION

The parties assert a variety of arguments in their cross-motions supporting summary judgement. Plaintiffs claim that Defendant misappropriated trade secrets in violation of the DTSA and PUTSA. Plaintiffs further claim that Defendant breached the Offer Letter and his fiduciary duty of loyalty. Finally, Defendant counterclaims asserting a breach of contract claim and a violation of the WPCL. The Court will address each argument in turn.

### 1.   Trade Secret Misappropriation (Count I & Count II)

To assert a claim under the DTSA, a plaintiff must show (1) that they own a trade secret and (2) that the defendant misappropriated the trade secret. *Ecosave Automation, Inc. v. Delaware Valley Automation, LLC*, 540 F. Supp. 3d 491, 500 (E.D. Pa. 2021).[1] Under the DTSA and PUTSA, a trade secret is information that: "(1) the owner has taken reasonable means to keep secret; (2) derives independent economic value, actual or potential, from being kept secret; (3) is not readily ascertainable by proper means; and (4) others who cannot readily access it would obtain economic value from its disclosure or use." *Jazz Pharm., Inc. v. Synchrony Grp., LLC*, 343 F. Supp. 3d 434, 444 (E.D. Pa. 2018).

A customer list can be a trade secret if its owner invested time and resources in compiling the information, organizing it or making it searchable. *Synthes, Inc.*, 25 F. Supp. 3d at 706.

---

[1] The DTSA and PUTSA are substantively identical. *EMC Outdoor, LLC v. Stuart*, No. 17-5172, 2021 WL 1224064, at *11 (E.D. Pa. Mar. 31, 2021). "Under the PUTSA, the elements of a misappropriation of trade secrets claim are: (1) the existence of a trade secret; (2) communication of the trade secret pursuant to a confidential relationship; (3) use of the trade secret, in violation of that confidence; and (4) harm to the plaintiff." *Ecosave Automation, Inc.*, 540 F. Supp. 3d at 500.

However, when an owner makes no such investment and instead obtains the list from a third-party, the list is not a protectable trade secret. *Ozburn-Hessey Logistics, LLC v. 721 Logistics, LLC*, 13 F. Supp. 3d 465, 474-75 (E.D. Pa. 2014).

The parties first assert summary judgment is proper on the trade secret misappropriation claims. Plaintiffs seek summary judgment arguing that their existing and prospective customer lists, pricing information, and goodwill are protectable trade secrets. Defendant claims that Plaintiffs' customer and pricing lists are not protectable as trade secrets because they contain material acquired from a third party.

Defendant alleges that Plaintiffs obtained their lists from third party sources, including an online database. Defendant identified a March 29, 2020, email from Plaintiffs' Vice President of Sales, where he admits to utilizing a third-party database to acquire nationwide hospital contacts. *See* Def.'s Exhibit H. Plaintiffs admit that they used third party sources, such as Zoominfo and Quickbase, to obtain contact information contained in its customer compilations. PSOF ¶¶ 77-79; *See* Pl's Exhibit 3, Berkowitz Dep. at 112:17-113:13, 131:15-137:12. However, Berkowitz's deposition testimony indicates that the information on the databases was not publicly available and in order to gain access, Plaintiffs expended substantial capital. *Id.*

Here, Plaintiffs' lists comprise the names and contact information of Plaintiffs' customers and industry contacts, which have allegedly been developed and compiled into a searchable format at great expense. Pl.'s Mot. Summ. J. at 28-29. Plaintiffs admitted that they obtained some of the contact information in their customer lists from third-party sources. *See* Pl.'s Exhibit 3. A reasonable jury could conclude that Plaintiffs' reliance on third-party sources prevents their customer and pricing lists from being protectable trade secrets. *See Am. Hearing Aid Assoc., Inc v. GN Resound North America*, 309 F. Supp. 2d 694, 706 (E.D. Pa. 2004) (noting that "[] courts

have denied protection to customer lists which are easily generated from trade journals, ordinary telephone listings, or an employee's general knowledge of who, in an established industry, is a potential customer for a given product").

However, Plaintiffs have also produced evidence that the third-party information is not publicly available and that Plaintiffs had to spend substantial money gaining access to it. *See* Pl.'s Exhibit 3, Berkowitz Dep. at 112:17-113:13, 131:15-137:12. Therefore, while Plaintiffs admit that certain contact information on these lists may be readily available through a third party source, a reasonable jury could conclude that Plaintiffs significant investment of time and capital make its customer and pricing lists protectable trade secrets. *See BIEC Int'l, Inc v. Global Steel Serv., Ltd*., 791 F. Supp. 489, 545 (E.D. Pa. 1992) (granting trade secret protection to a customer mailing list that contained certain information that was readily ascertainable to someone working in the industry and discoverable by reference to a standard trade journal); *See also Freedom Med. Inc. v. Whitman*, 343 F. Supp. 3d 509, 519 (E.D. Pa. 2018) (noting that "courts have afforded greater protection to the compilation of [pricing] information—its aggregation and organization into the spreadsheets where the compilation of information is not readily obtainable from publicly available sources").

Accordingly, because reasonable juries could disagree as to whether Plaintiffs' lists were trade secrets, the Court will deny the cross-motions for summary judgment with respect to the trade secrets misappropriation claims.

## 2.  Breach of Contract (Count III)

Pennsylvania law recognizes waiver, "which is the voluntary and intentional abandonment or relinquishment of a known right." *Ruple Builders, Inc. v. Brackenridge Constr. Co*., No. 2:17-cv-00004, 2019 WL 109329, at *6 (W.D. Pa. Jan. 4, 2019) (internal quotation omitted) (quoting

*Kamco Indus. Sales, Inc. v. Lovejoy, Inc.*, 779 F. Supp. 2d 416, 423 (E.D. Pa. 2011). "To constitute a waiver of a legal right, there must be a clear, unequivocal[,] and decisive act of the party with knowledge of such right and an evident purpose to surrender it." *Id.* (quoting *Commonwealth ex rel. Corbett v. Griffin*, 946 A.2d 668, 679 (Pa. 2008). "[A] course of performance by one party accepted or acquiesced in without objection by the other may be evidence of an agreed modification or waiver of a written term." *Id.* (quoting *Agathos v. Starlite Motel*, 977 F.2d 1500, 1509 (3d Cir. 1992).

The parties next seek summary judgment on Plaintiffs' breach of contract claim. Plaintiffs assert that Defendant breached the non-solicitation clause in his Offer Letter after his termination, by soliciting Plaintiffs' customers and selling them PPE. Defendant contends that Plaintiffs acquiesced to Defendant selling PPE to customers because during Defendant's employment, Plaintiffs acknowledged the conflict, continued employing him, and gave him a $50,000 raise.

Defendant produced deposition testimony where Plaintiffs admit that once they became aware of Defendant's side activities, rather than firing him, Plaintiffs agreed to keep him on as an employee and increase his annual draw from $100,000 to $150,000. *See* Def.'s Exhibit G. Defendant further identified a September 9, 2020, email where Plaintiffs indicate that Defendant's conflict of interest was not appropriate, but permitted his continued employment as a salesperson. *See* Def.'s Exhibit I. In response, Plaintiffs assert that they never consented to Defendant's continued operation of IMBG and insist that Defendant's continued employment was conditioned on his agreement to cease IMBG's operations. PSOF ¶¶ 91-99. Plaintiffs identified deposition testimony where Jordan Berkowitz claims that Defendant was told that IMBG posed a conflict of interest and IMBG's operations needed to cease immediately. *See* Pl.'s Exhibit 3, Berkowitz Dep. at 188: 1-22, 210:3-19.

-8-

Here, a genuine issue of fact exists as to whether Plaintiffs' acknowledgement of Defendant's side business and Plaintiffs continued employment of Defendant constitutes a waiver of the non-solicitation clause in the Offer Letter. A reasonable jury could credit Plaintiffs' testimony and conclude that they withheld consent. Because reasonable juries could disagree about whether the evidence supports waiver, the Court will deny the cross-motions for summary judgment with respect to the breach of contract claim.

### 3. Breach of Fiduciary Duty (Count IV)

"Pennsylvania law dictates that an employee, as the agent of his employer, owes his employer a duty of loyalty." *Synthes, Inc*., 25 F. Supp. 3d at 667 (citing *Crown Coal & Coke Co. v. Compass Point Res., LLC*., No. 07-1208, 2009 WL 891869, at *5 (W.D. Pa. Mar. 31, 2009). An employee's duties of loyalty include "a duty to refrain from competing with the principal and from taking action on behalf of, or otherwise assisting . . . competitors throughout the duration of the agency relationship . . . [and] a duty not to use property or confidential information . . . for the agent's own purpose or those of a third party." *Id.* at 667; *See* Restatement (Third) of Agency §§ 8.04, 8.05 (2006). "A principal may consent to action by an agent that would otherwise contravene the agent's duties." Restatement (Third) of Agency § 8.06 (2006); *See also E. & W. Coast Serv. Corp. v. Papahagis*, 25 A.2d 339, 340 (Pa. 1942). (recognizing that an employee does not breach the duty of loyalty when the employee secures permission from the employer to act against a duty owed).

Plaintiffs assert that summary judgment is proper on their breach of fiduciary duty claim because Defendant, as Plaintiffs' agent, breached a duty of loyalty during his employment by creating a competing PPE business and selling PPE to Plaintiffs' customers. Defendant contends

that Plaintiffs acquiesced to the breach of the duty of loyalty by acknowledging that Defendant's side business posed a conflict of interest and allowing Defendant to remain employed.

Here, Plaintiffs' breach of fiduciary duty claim turns on the same evidence as their breach of contract claim. Therefore, the Court will deny the cross-motions for summary with respect to the breach of fiduciary duty claim. *See Synthes, Inc.*, 25 F. Supp. 3d at 669-70 (denying summary judgment finding that an employee's duty of loyalty included a duty not to compete with employer but noting that it is difficult to distinguish between employees actions during employment that constituted mere preparation for competition and actions that represent competition).

### 4.  Counterclaims (Breach of Contract and Violation of WPCL)

Finally, Defendant counterclaims asserting a breach of contract claim and violation of the WPCL, alleging that Plaintiffs failed to pay his earned commissions after termination. "The WPCL does not create a right to compensation; it provides a statutory remedy when the employer breaches a contractual obligation to pay earned wages." *Oxner v. Cliveden Nursing & Rehab. Ctr. PA, L.P.* 132 F. Supp. 3d 645, 649 (E.D. Pa 2015) (citing *De Asencio v. Tyson Foods, Inc.*, 342 F.3d 301, 309 (3d Cir. 2003). "The contract between the parties governs in determining whether specific wages are earned." *Id.* at 649. The Third Circuit has held "no contract is formed if an employer retains complete discretion to modify or cancel an employee's commission. This conclusion accords with hornbook Pennsylvania law." *Barton v. Hewlett-Packard Co.*, 635 F. App'x 46, 48 (3d Cir. 2015).

The parties dispute whether a contract was formed. Plaintiffs argue that they retained the right to alter or modify the commission structure and policy at any time. Pl.'s Response Def.'s Mot. Summ. J. at 17. In response, Defendant claims that his right to commissions do not stem from an email. Def.'s Response Pl.'s Mot. Summ. J. at 8. Rather, Defendant insists his "right to a

commission is based upon the oral representations of the Plaintiffs that they would pay a 4% commission on furniture from Arnold's and a 2% commission on PPE from Sunline." *Id.*

Here, a genuine issue of fact exists regarding whether a contract was formed. A reasonable jury could credit Plaintiffs' testimony and conclude that they retained the unilateral right to modify Defendant's commission structure. *See Elwell v. SAP Am., Inc.*, No. 18-0489, 2019 WL 1114898, at *3 (E.D. Pa. Mar. 8, 2019) ("The Third Circuit has found that where a company includes this type of reservation of rights, it "clearly manifest[s] its intention not to be bound by the commission rates set forth, and no contract is formed if an employer retains complete discretion to modify or cancel an employee's commission") (internal quotations omitted).

## IV.    CONCLUSION

For the foregoing reasons, this Court will deny both parties' motions for summary judgment. An appropriate order follows.

BY THE COURT:

*/s/ John M. Gallagher*
JOHN M. GALLAGHER
United States District Court Judge