IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ARNOLD'S OFFICE FURNITURE, LLC, *et al.*,<br>　　　　Plaintiffs,<br><br>v.<br><br>IAN BORDEN, *et al.*,<br>　　　　Defendants. | :<br>:<br>:<br>:　Civil No. 5:20-cv-05470-JMG<br>:<br>:<br>: |

**MEMORANDUM OPINION**

**GALLAGHER, J.**　　　　　　　　　　　　　　　　　　　　　　　　　　**August 23, 2022**

**I.　OVERVIEW**

Following a seven-day jury trial on Plaintiffs Arnold's Office Furniture, LLC, and Sunline USA LLC's claims, a jury found that Defendant Ian Borden committed breach of contract, breach of fiduciary duty, and misappropriated trade secrets in violation of the Defend Trade Secrets Act ("DTSA") and the Pennsylvania Uniform Trade Secrets Act ("PUTSA") by creating and operating a competing business, Defendant I M Borden Group LLC ("IMBG"). As a result, the jury awarded Plaintiffs $1,057,016 in damages. Plaintiffs now seek additional damages because the jury found that Defendants' trade secret misappropriation was willful and malicious. For the reasons set forth in greater detail below, Plaintiffs' Motion is denied.

**II.　FACTUAL BACKGROUND**

Plaintiffs filed a Complaint with this Court on November 2, 2020, alleging misappropriation of trade secrets under the DTSA (Count I) and the PUTSA (Count II), breach of contract (Counts III–VI), and breach of fiduciary duty (Count VII). *See* ECF No. 1. On February 12, 2021, Plaintiffs filed an amended Complaint, *see* ECF No. 26, to which Defendants responded and brought counterclaims of their own, on February 26, 2021, *see* ECF No. 27.

The Court denied motions to dismiss filed by both parties, *see* ECF Nos. 13, 91, as well as the parties' cross-motions for summary judgment, *see* ECF No. 109.  Afterward, the Court held a seven-day jury trial on Plaintiffs' claims and Defendants' counterclaims.  *See* ECF Nos. 180, 192–197.  The jury found for Plaintiffs on all claims and counterclaims, awarded $1,057,016 in damages, and further determined that Defendants' misappropriation of trade secrets was willful and malicious.  *See* ECF No. 179.  Plaintiffs thereafter filed the present Motion, requesting that the Court impose exemplary damages under the DTSA and the PUTSA.  *See* ECF No. 183.

### III.   LEGAL STANDARD

Both the DTSA and the PUTSA contemplate the "willful and malicious" misappropriation of trade secrets.  *See* 18 U.S.C. § 1836(b)(3)(C); 12 PA. CONS. STAT. ANN. § 5304(b).[1]  "[I]n cases of willful and malicious misappropriation, the Court may award additional exemplary damages in an amount not to exceed double the damages award." *Agrofresh Inc. v. Essentiv LLC*, No. 16-662, 2020 WL 7024867, at *23 (D. Del. Nov. 30, 2020) (citations omitted).  This decision lies solely within the Court's discretion.  *See Estate of Accurso v. Infra-Red Servs., Inc.*, 805 F. App'x 95, 107 (3d Cir. 2020); *see also* 4 MILGRAM ON TRADE SECRETS § 15.02 (2022) ("An award of exemplary damages is within the discretion of the court.").

Just because a jury finds willful and malicious misappropriation does not necessarily mean that the prevailing party is entitled to exemplary damages.  *Estate of Accurso*, 805 F. App'x at 107.  Instead, courts consider a host of factors, including, but not limited to, "the duration of misappropriative conduct, the defendant's consciousness of resulting injury, and any efforts to cover up malfeasance."  *Advanced Fluid Sys., Inc. v. Huber*, 295 F. Supp. 3d 467, 493 (M.D. Pa.

---

[1]   The PUTSA defines "willful and malicious" as "[s]uch intentional acts or gross neglect of duty as to evince a reckless indifference of the rights of others on the part of the wrongdoer, and an entire want of care so as to raise the presumption that the person at fault is conscious of the consequences of his carelessness."  12 PA. CONS. STAT. ANN. § 5302.

2

2018) (citations omitted); *see also Proofpoint, Inc. v. Vade Secure, Inc.*, No. 19-cv-04238-MMC, 2021 WL 5407521, at *2 (N.D. Cal. Nov. 18, 2021) (describing additional factors that courts consider under the DTSA).

## IV.   ANALYSIS

Plaintiffs have not proven that exemplary damages are warranted. *See, e.g.*, *Advanced Fluid Sys.*, 295 F. Supp. 3d at 494 (finding that plaintiff "has not proven that exemplary damages are appropriate" as to certain defendants). Their Motion appears to be rooted primarily in the jury's determination that Defendants acted willfully and maliciously. *See* ECF No. 183-1 at 4. Although that finding was soundly rooted in the evidence admitted at trial, it does not in and of itself justify exemplary damages. *Estate of Accurso*, 805 F. App'x at 107. And the remainder of Plaintiffs' Motion pays lip service to the factors that courts analyze before imposing exemplary damages. To that end, the Court agrees with Defendants: "Plaintiffs' failure to provide any argument about why this Court, in its discretion, should award exemplary damages is reason alone to deny the motion." ECF No. 200 at 5.

Regardless, upon a careful review of the record, the Court finds that exemplary damages would be inappropriate. According to Defendants, this case is about a series of "misunderstandings between an employer and an employee during a time of admitted chaos." *Id.* at 2. That description is, in some respects, apt. Much of the evidence presented at trial centered on an agreement that the parties entered in August 2020, after Plaintiffs learned of Defendants' competing enterprise. Plaintiffs' Senior Vice President, Robert Pfister, memorialized that agreement as follows: "Ian agreed to discontinue with his own business going forward and to have all PPE sales go through Sunline Supply, except for selling off the small inventory in his basement and finalizing a few deliveries in the pipeline." Pls.' Ex. 190. Notwithstanding that recitation,

Borden believed he had permission to finalize deliveries *as well as* "deals that were yet to be closed in the pipeline." 5/23/22 Trial Tr. 100:14–20.

Whatever the sincerity of Borden's belief, his continued sourcing and selling of inventory through IMBG after August 2020 was not intended to affirmatively harm Plaintiffs. At least, there is no direct evidence to that effect. *Cf. Advanced Fluid Sys.*, 295 F. Supp. 3d at 493 (awarding exemplary damages where defendant "was conscious that his actions would cause financial and reputational harm to [plaintiff]"). If anything, Borden was—admittedly—motivated by greed. *See, e.g.*, 5/23/22 Trial Tr. 60:24–61:1 ("I was in the moment. I was trying to make money, I was trying to do what was best for my family, and I took advantage, I grabbed it.").

At the same time, though, it is beyond question that Borden was aware of his wrongdoing. Pfister and Plaintiffs' President, Jordan Berkowitz, repeatedly told Borden that IMBG represented a conflict of interest. *See, e.g.*, 5/18/22 Trial Tr. 83:9–16; Pls.' Ex. 89; Pls.' Ex. 189; Pls.' Ex. 190. And Borden's own words drive the point home. After Pfister warned Borden that maintaining IMBG created a "VERY slippery slope," Borden responded that he understood "the slope and I'm ready for whatever comes of this. I made this bed and I'll sleep in it." Pls.' Ex. 196. Borden similarly understood Berkowitz's aversion to IMBG. *See* 5/23/22 Trial Tr. 86:3–5 ("I knew, yes, I knew he meant it was unfair to the business for you to be doing your side business, for you not to be focusing all of your attention to Sunline.").

That said, this case does not involve the "siphon[ing]" of trade secrets over a multi-year period. *Advanced Fluid Sys.*, 295 F. Supp. 3d at 493; *see also PPG Indus., Inc. v. Jiangsu Tie Mao Glass Co., Ltd.*, No. 2:15-cv-00965, 2020 WL 1526940, at *21 (W.D. Pa. Mar. 31, 2020) (awarding exemplary damages where defendants "spent two (2) years pushing [a former employee] to hand over more-and-more of [plaintiff's] intellectual property"). Nor is there any

suggestion that Borden "engaged in wholesale destruction of evidence" to conceal his wrongdoing. *Advanced Fluid Sys.*, 295 F. Supp. 3d at 493–94.[2]

On balance, the Court finds that the amount already awarded to Plaintiffs sufficiently deters future misconduct and reflects Defendants' culpability. *Cf. DiscoverOrg Data, LLC v. Bitnine Glob., Inc.*, No. 19-cv-08098-LHK, 2020 WL 6562333, at *10 (N.D. Cal. Nov. 9, 2020). Indeed, "Defendants are already subject to a significant punitive damages award," so "exemplary damages will not add any further deterrent." *Agrofresh Inc.*, 2020 WL 7024867, at *25.

## V.   CONCLUSION

Plaintiffs have not demonstrated the appropriateness of exemplary damages. While the jury concluded that Defendants' conduct was willful and malicious, that does not automatically warrant exemplary damages. Instead, the decision to impose exemplary damages ultimately rests within the Court's discretion. Upon review of the record, the Court declines Plaintiffs' invitation to increase the damages award. Plaintiffs' Motion is therefore denied, and an appropriate Order follows.

BY THE COURT:

*/s/ John M. Gallagher*
JOHN M. GALLAGHER
United States District Court Judge

---

[2] The Court is mindful, however, that "efforts to cover up malfeasance" are not limited to the spoliation of evidence. *Advanced Fluid Sys.*, 295 F. Supp. 3d at 493; *see, e.g.*, *PPG Indus., Inc.*, 2020 WL 1526940, at *22 (emphasizing the "decision to remove [plaintiff's] logo from the files in a blatant attempt to conceal Defendants' unlawful scheme"). And here, it can be argued that Borden was not exactly forthcoming about his continued operation of IMBG. *See, e.g.*, Pls.' Ex. 192 ("I made a smart decision to dissolve my LLC, thanks."). That conduct points toward an award of exemplary damages, but it does not tip the balance on its own.